*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CODY BONTER and KAYTLIN JACKMAN,

        Plaintiffs/Counterdefendants-
        Appellees,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant/Counterplaintiff/Cross-
        Plaintiff-Appellant,

and

TAYLON WILLIAMS,

        Defendant/Cross-Defendant.

UNPUBLISHED
August 17, 2023

No. 360411
Genesee Circuit Court
LC No. 21-115568-CK

---

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

In this declaratory-judgment action, defendant/counterplaintiff/cross-plaintiff Progressive Marathon Insurance Company appeals by right the trial court's order denying Progressive's motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine question of material fact) and instead granting summary disposition in favor of plaintiffs, Cody Bonter and Kaytlin Jackman, pursuant to MCR 2.116(I)(2) (opposing party entitled to judgment). We reverse.

## I. BACKGROUND

On June 19, 2020, Progressive issued a no-fault automobile insurance policy to defendant Taylon Williams with effective dates from June 20, 2020 to December 20, 2020. The policy's terms provided liability coverage of $20,000 per person or $40,000 per accident, and it covered Williams' 2014 Jeep Grand Cherokee. Pursuant to 2019 PA 21 and 2019 PA 22, amendments to the Insurance Code, MCL 500.100 *et seq*., mandated increased minimum liability limits of $250,000 per person or $500,000 per accident for "automobile liability or motor vehicle liability polic[ies] . . . delivered

or issued for delivery in this state" after July 1, 2020. MCL 500.3009(1). On July 6, 2020, Progressive, at Williams' request, changed the insured vehicle under the policy from the 2014 Jeep Grand Cherokee to a 2017 Dodge Charger. Progressive sent Williams an "auto insurance coverage summary" reflecting this change. On July 22, 2020, Progressive sent Williams another insurance coverage summary reflecting that a credit union had been added as an interest-holder on the vehicle.

On July 25, 2020, Williams, while driving the 2017 Dodge Charger, was responsible for an accident in which plaintiffs were injured. Plaintiffs initially sued Williams for their injuries. After Progressive offered to settle for the limits stated in its policy with Williams, plaintiffs commenced this declaratory-judgment action to resolve whether Progressive, as Williams' insurer, was liable up to the $20,000/$40,000 limit stated in Williams' policy or up to the new statutorily-mandated $250,000/$500,000 limit. Progressive counterclaimed, then moved for summary disposition, to resolve the same question. The only dispute concerned the amount of Progressive's liability. The trial court determined that the July 6, 2020 change in vehicles, coupled with Progressive's sending of the "auto insurance coverage summary" to Williams, fulfilled the statutory conditions to impose the higher limits, so it denied Progressive's motion for summary disposition and granted summary disposition in favor of plaintiffs. This appeal followed.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). Summary disposition under MCR 2.116(C)(10) is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Thus, "[a] motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim." *McMaster*, 509 Mich at 431. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

The initial burden in a motion under MCR 2.116(C)(10) rests with the moving party, who can satisfy its burden by either (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks and citation omitted). In response to a properly supported motion under MCR 2.116(C)(10), the nonmoving party cannot "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

The trial court's interpretation and application of statutes is reviewed de novo. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018).

## III. ANALYSIS

The parties' dispute centers around MCL 500.3009(1), which states:

(1) Subject to subsections (5) to (8), an automobile liability or motor vehicle liability policy that insures against loss resulting from liability imposed by law for

property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle must not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to all of the following limits:

(a) Before July 2, 2020, a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and after July 1, 2020, a limit, exclusive of interest and costs, of not less than $250,000.00 because of bodily injury to or death of 1 person in any 1 accident.

(b) Before July 2, 2020 and subject to the limit for 1 person in subdivision (a), a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and after July 1, 2020, and subject to the limit for 1 person in subdivision (a), a limit of not less than $500,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

(c) A limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident. [Emphasis added.]

The parties' dispute about this subsection more or less comes down to a single issue—whether MCL 500.3009(1) automatically increased Williams' policy limits as of July 2, 2020. This question has been resolved by *Progressive Marathon Ins Co v Pena*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 358849), which, as a published decision, is controlling under the rule of stare decisis. See MCR 7.215(J)(1).

In *Pena*, the plaintiff issued an insurance policy to one of the defendants with policy limits of $20,000 per person or $40,000 per accident, and the policy had effective dates from March 11, 2020 to September 11, 2020. *Pena*, ___ Mich App at ___; slip op at 1. This Court considered and rejected any argument that the policy's limits automatically increased to the new statutory limits of $250,000/$500,000 on July 2, 2020, expressly holding that the increased limits applied only to "policies delivered or issued for delivery after July 1, 2020." *Pena*, ___ Mich App at ___; slip op at 2-5. In defining the words "delivered" and "issued," this Court consulted a dictionary, and concluded that delivery involved conveying something to another person, and issuance meant distributing something or putting it forth. *Pena*, ___ Mich App at ___; slip op at 3-4. The Court accordingly concluded "that the phrase 'delivered or issued for delivery' under MCL 500.3009(1) can encompass both a policy that was previously delivered and left in the insured's possession and a policy that was sent out or distributed to an insured for delivery." *Id*. at ___; slip op at 4. The *Pena* Court went on to observe that pursuant to the plain language of the statute, "it is clear that the Legislature did not intend for the increased minimums to apply automatically to policies that had been delivered prior to July 2, 2020." *Id*. at ___; slip op at 4. This effectively resolves the parties' dispute over whether the applicable policy limits automatically increased on July 2, 2020—*Pena* held that they do not.

Turning to the only potential wrinkle in this case, Progressive, at Williams' request, changed the insured vehicle under the policy after July 1, 2020, and sent Williams an "auto insurance coverage summary" reflecting that change. While not explicitly stated, the trial court appeared to hold that this violated MCL 500.3009(8), which states, "After July 1, 2020, *if an insurance policy*

*is issued or renewed as described in subsection (1)* and the person named in the policy has not made an effective choice under subsection (5), the limits under subsection (1)(a) and (b) apply to the policy." (Emphasis added.) Again, MCL 500.3009(1) concerns whether a policy was "delivered or issued for delivery." Thus, the touchstone for resolving whether a policy was "issued or renewed" under MCL 500.3009(8) is whether the policy was "delivered or issued for delivery" after July 1, 2020. That in turn means Progressive must have, in some way, actually conveyed or attempted to convey a *policy* to Williams after July 1, 2020. See *Pena*, ___ Mich App at ___; slip op at 4.

There is no evidence in the record that Progressive did so. Progressive submitted evidence that it sent Williams a policy on June 19, 2020, stating that his coverage begins the following day— June 20, 2020. The same evidence shows that Williams' policy was given "Policy Number: 939510962." Each "auto insurance coverage summary" that Williams received after July 1, 2020, listed the same policy number and stated, "Your insurance policy and any policy endorsements contain a full explanation of your coverage." By necessary inference, each insurance coverage summary sent to and received by Williams was not, itself, a policy.

Progressive submitted this evidence to the trial court, thereby sufficiently supporting its argument that it did not deliver or issue for delivery a *policy* to Williams after July 1, 2020. See *Quinto*, 451 Mich at 362. This shifted the burden to plaintiffs to submit documentary evidence setting forth a genuine issue of material fact about whether Progressive delivered or issued for delivery a policy to Williams after July 1, 2020. See *Campbell*, 273 Mich App at 229. In response to Progressive's motion, plaintiffs only pointed to the July 6, 2020 insurance coverage summary as evidence that Progressive delivered a "policy" to Williams after July 1, 2020. For the reasons explained, however, this summary supports that Progressive did *not* issue a policy to Williams on that date; the summary refers to the same "policy number" as Williams' other policy documents and otherwise clearly indicates that it is not, itself, a policy.[1] Accordingly, plaintiffs failed to establish a genuine issue of material fact whether Progressive delivered or issued for delivery a *policy* after July 1, 2020. From this, it follows that MCL 500.3009(8) is necessarily inapplicable, and Progressive was otherwise entitled to summary disposition in this declaratory action.[2]

Reversed and remanded for the trial court to enter an order granting Progressive's motion for summary disposition. We do not retain jurisdiction. Progressive, as the prevailing party, may tax costs under MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey

---

[1] Notably, plaintiffs on appeal now only assert "that Progressive delivered *coverage* to Williams . . . on July 6, 2020, i.e., after July 1, 2020." (Emphasis added.) However, the plain language of MCL 500.3009(1) refers to delivering a "policy," not "coverage."

[2] In light of this holding, we decline to address Progressive's alternative arguments on appeal.